Patrick C. McDonnell, Esq.
Nevada Bar No. 13188
Matthew D. Whittaker, Esq.
Nevada Bar No. 13281
**MICHAELSON &ASSOCIATES, LTD.**
2200 Paseo Verde Parkway, Suite 160
Henderson, Nevada 89052
(702) 731-2333
patrick@michaelsonlaw.com
matthew@michaelsonlaw.com

Antonio M. Romanucci (*Pro Hac Pending*)*
Bhavani Raveendran (*Pro Hac Pending*)*
Ian Fallon (*Pro Hac Pending*)*
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street Suite 900
Chicago, Illinois 60654
(312) 458-1000
aromanucci@rblaw.net
braveendran@rblaw.net
ifallon@rblaw.net

Benjamin J. Crump (*Pro Hac Pending*)*
**CRUMP LAW**
717 D Street N.W., Suite 310
Washington, D.C. 20004
(800) 859-9999
ben@crumplaw.com

*Attorneys for Plaintiffs*

## IN THE U.S. DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MARCIA WELLS and TEENA ACREE, individually and as Co-Special Administrators of the Estate of Byron Lee Williams, Deceased; TINA LEWIS-STEVENSON, individually as an heir; GWENDOLYN LEWIS, individually as an heir; ROBYN WILLIAMS, individually as an heir; and DEWAIN LEWIS, individually as an heir, | CASE NO.: |
| Plaintiffs, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| THE CITY OF LAS VEGAS, a political subdivision of the State of Nevada; CLARK COUNTY, a political subdivision of the State of Nevada; LAS | |

1

VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; OFFICER PATRICK, CAMPBELL, individually and as agent of the City of Las Vegas, Clark County, and the Las Vegas Metropolitan Police Department; OFFICER BENJAMIN VASQUEZ, individually and as agent of the City of Las Vegas, Clark County, and the Las Vegas Metropolitan Police Department; OFFICER ALEXANDER GONZALEZ, individually and as agent of the City of Las Vegas, Clark County, and the Las Vegas Metropolitan Police Department; OFFICER ROCKY ROMAN, individually and as agent of the City of Las Vegas, Clark County, and the Las Vegas Metropolitan Police Department; SHERIFF JOE LOMBARDO, as agent of the City of Las Vegas, Clark County, and the Las Vegas Metropolitan Police Department,

Defendants.

## COMPLAINT

NOW COME Plaintiffs, MARCIA WELLS and TEENA ACREE, individually and as Co-Special Administrators of the Estate of Byron Lee Williams, deceased; TINA LEWIS-STEVENSON, individually as an heir; GWENDOLYN LEWIS, individually as an heir; ROBYN WILLIAMS, individually as an heir; and DEWAIN LEWIS, individually as an heir, (collectively, "Plaintiffs"), by and through their attorneys, MICHAELSON & ASSOCIATES, LTD., ROMANUCCI & BLANDIN, LLC, and CRUMP LAW, and for their claims for relief against Defendants, CITY OF LAS VEGAS, CLARK COUNTY, LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and OFFICERS PATRICK CAMPBELL, BENJAMIN VASQUEZ, ALEXANDER GONZALEZ, and ROCKY ROMAN (collectively, "Defendants"), and each of them, jointly and severally, based upon knowledge, information, and reasonable belief derived therefrom, allege, complain, and state as follows:

/ / /

/ / /

/ / /

**NATURE OF ACTION**

1.   This action arises out of the death of BYRON LEE WILLIAMS caused by Defendants on September 5, 2019, at about 5:50 a.m., as Mr. Williams rode his bicycle on the sidewalk near the vicinity of Bonanza Road, just West of Martin Luther King Boulevard, in Las Vegas, Nevada.

2.   This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the officer-involved death of Plaintiffs' uncle, BYRON LEE WILLIAMS, decedent, in the custody of the Las Vegas Metropolitan Police Department on September 5, 2019.

**JURISDICTION AND VENUE**

3.   This Court has subject matter jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 over Plaintiffs' causes of actions arising under 42 U.S.C. §1983, as well as supplemental jurisdiction over state law claims arising out of Nevada law pursuant to 28 U.S.C. §1367.

4.   Venue is proper in the United States District Court, District of Nevada, pursuant to 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the District of Nevada and one or more of the Defendants is a political subdivision of the State of Nevada. Moreover, the underlying acts, omissions, events, injuries, and related facts upon which the present action is based occurred in Clark County, Nevada

**THE PARTIES**

5.   Defendant, CITY OF LAS VEGAS, is a governmental entity organized and existing under the laws of the State of Nevada and is a political entity of the State of Nevada. At all relevant times, Defendant CITY OF LAS VEGAS was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Las Vegas Metropolitan Police Department (hereinafter "LVMPD") and its employees and agents complied with the laws of the United States and of the State of Nevada.

6.   At all times, Defendant CITY OF LAS VEGAS, in conjunction with Defendant CLARK COUNTY, possessed the power and authority to adopt policies and prescribe rules, regulations,

and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the LVMPD and of its employees, agents, contractors and/or servants.

7.   In this case, Defendant CITY OF LAS VEGAS acted through agents, employees, servants, and contractors, including its policymakers, including Defendant Officers PATRICK CAMPBELL, BENJAMIN VASQUEZ, ALEXANDER GONZALEZ, ROCKY ROMAN and SHERIFF JOE LOMBARDO.

8.   Defendant, CLARK COUNTY, is a governmental entity organized and existing under the laws of the State of Nevada and is a political entity of the State of Nevada. At all relevant times, Defendant CLARK COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LVMPD and its employees and agents complied with the laws of the United States and of the State of Nevada.

9.   At all times, Defendant CLARK COUNTY, in conjunction with Defendant CITY OF LAS VEGAS, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the LVMPD and of its employees, agents, contractors, and/or servants.

10.  In this case, Defendant CLARK COUNTY acted through agents, employees, servants, and contractors, including its policymakers, including Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, ROMAN, and SHERIFF LOMBARDO.

11. Defendant LVMPD is a combined CITY OF LAS VEGAS and CLARK COUNTY law enforcement agency, headed by Defendant SHERIFF LOMBARDO.

12. At all times, Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD") possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the LVMPD and of its employees, agents, contractors, and/or servants.

/ / /

13.  Defendant Officer CAMPBELL was at all times relevant to this action a police officer with LVMPD and was acting under color of state law. He is sued in this action in his individual capacity as to Plaintiff's claims arising under 28 U.S.C. § 1983 and is sued in his individual and official capacity as to Plaintiff's state law claims.

14. Defendant Officer VASQUEZ was at all times relevant to this action a police officer with LVMPD and was acting under color of state law. He is sued in this action in his individual capacity as to Plaintiff's claims arising under 28 U.S.C. § 1983 and is sued in his individual and official capacity as to Plaintiff's state law claims.

15. Defendant Officer GONZALEZ was at all times relevant to this action a police officer with LVMPD and was acting under color of state law. He is sued in this action in his individual capacity as to Plaintiff's claims arising under 28 U.S.C. § 1983 and is sued in his individual and official capacity as to Plaintiff's state law claims.

16. Defendant Officer ROMAN was at all times relevant to this action a police officer with LVMPD and was acting under color of state law. He is sued in this action in his individual capacity as to Plaintiff's claims arising under 28 U.S.C. § 1983 and is sued in his individual and official capacity as to Plaintiff's state law claims.

17. Defendant Officers PATRICK CAMPBELL, BENJAMIN VASQUEZ, ALEXANDER GONZALEZ, and ROCKY ROMAN (collectively as "Defendant Officers") are and were, at all times relevant to this action, police officers employed by CITY OF LAS VEGAS and were acting under color of state law. They are sued in their individual capacities as to Plaintiff's claims arising under 28 U.S.C. § 1983 and are sued in their individual and official capacities as to Plaintiff's state law claims.

18. At all relevant times, Defendant Officers PATRICK CAMPBELL, BENJAMIN VASQUEZ, ALEXANDER GONZALEZ, and ROCKY ROMAN, were acting under color of law, in the course of their employment, and with the complete authority and ratification of Defendants LVMPD, CITY OF LAS VEGAS, and CLARK COUNTY.

/ / /

/ / /

19. At all relevant times, Defendants LVMPD, CITY OF LAS VEGAS, and CLARK COUNTY were the employers of Defendant Officers PATRICK CAMPBELL, BENJAMIN VASQUEZ, ALEXANDER GONZALEZ, and ROCKY ROMAN.

20. Defendant Officers PATRICK CAMPBELL, BENJAMIN VASQUEZ, ALEXANDER GONZALEZ, and ROCKY ROMAN are sued individually and as agents of Defendants LVMPD, CITY OF LAS VEGAS, and CLARK COUNTY.

21. Defendants were the agents, employees, contractors and/or co-conspirators of the other Defendants, and each of them were acting within the course and scope of their agency, employment, and/or concert of action, and are vicariously liable, jointly and severally, for the actions, inactions, and/or omissions of themselves and of the other Defendants, which proximately resulted in the physical, emotional, and future damages to the Plaintiffs as herein alleged.

22. At the time of his death on September 5, 2019, decedent, BYRON LEE WILLIAMS ("Mr. Williams"), was a citizen of the United States and a resident of Clark County, Nevada.

23. Plaintiff MARCIA WELLS ("Ms. Wells") is a resident of the Clark County, Nevada and is the niece of BYRON LEE WILLIAMS. Ms. Wells sues in both her individual capacity and as Co-Special Administrator for the Estate of Byron Lee Williams.

24. Plaintiff TEENA ACREE ("Ms. Acree") is a resident of Bonneville????? County, Idaho and is the niece of BYRON LEE WILLIAMS. Ms. Acree sues in both her individual capacity and as Co-Special Administrator for the Estate of Byron Lee Williams.

25. On or about June 29, 2021, Plaintiffs MARCIA WELLS and TEENA ACREE were appointed as the Co-Special Administrators for the Estate of Byron Lee Williams by the Eighth Judicial District Court of Nevada in Clark County.

26. Plaintiff TINA LEWIS-STEVENSON ("Ms. Lewis-Stevenson") is a resident of San Diego County, California, and is the sister of BYRON LEE WILLIAMS. Ms. Lewis-Stevenson sues in her individual capacity as an heir.

/ / /

/ / /

27. Plaintiff GWENDOLYN LEWIS ("Ms. Lewis") is a resident of San Bernardino County, California, and is the sister of BYRON LEE WILLIAMS. Ms. Lewis sues in her individual capacity as an heir.

28. Plaintiff ROBYN WILLIAMS ("Ms. Williams") is a resident of Los Angeles County, California, and is the sister of BYRON LEE WILLIAMS. Ms. Williams sues in her individual capacity as an heir.

29. Plaintiff DEWAIN LEWIS ("Mr. Lewis") is a resident of Bonneville County, Idaho, and is the brother of BYRON LEE WILLIAMS. Mr. Lewis sues in his individual capacity as an heir.

30. Plaintiffs seek both survival and wrongful death damages under federal and state law.

**FACT STATEMENT**

I.     **Las Vegas Metro Police Department Policies in force on September 5, 2019.**

31. LVMPD policies requires officers to hold the highest regard for the dignity and liberty of all persons and place minimal reliance upon the use of force.

32. LVMPD Policy states that the LVMPD respects the sanctity of every human life, and the application of deadly force is a measure to be employed in the most extreme circumstances where lesser means of force have failed or could not be reasonably considered.

33. LVMPD Policy requires officers to only use a level of force that is objectively reasonable to bring an incident or persons under control and to safely accomplish a lawful purpose.

34. LVMPD Policy requires that the level of force administered be carefully controlled and not be more than objectively reasonable to overcome the physical harm threatened.

35. LVMPD Use of Force Policy 6/002.00(II) specifically allows Lateral Vascular Neck Restraint, a specific method of applying pressure to the side of a subject's neck to overcome resistance and allow safe control.

36. LVMPD Medical Attention Policy requires officers to monitor a subject and immediately summon medical attention if force results in visible injury or complaint of injury.

37. The LVMPD Medical Attention Policy also requires that when requesting medical attention, an officer provides the nature of the injury to responding medical personnel.

/ / /

38. The Medical Attention policy does not require medical attention in every event where a subject is having difficulty breathing or informs an officer of difficulty breathing.

39. LVMPD Policy requires that officers only deactivate cameras if there is a reasonable belief there will be no loss of critical documentary information.

40. LVMPD Policy 5/212.05 on Foot Pursuits states that foot pursuits are inherently dangerous and the primary consideration when determining whether a foot pursuit will be initiated or continued is the safety of personnel or the public.

41. Officers engaging in a foot pursuit must evaluate the reason for the pursuit, the severity of the crime, and reasonable alternatives.

42. Officers initiating a foot pursuit should broadcast the reason for foot pursuit, description of the subject, and whether or not the subject is believed to be armed.

43. LVMPD Policy 5/212.05 on Foot Pursuits specifically states that "Persons who are in prolonged physical encounters with officers may be at risk of medical distress. Officers will summon medical attention if the subject is injured or complains of injury (e.g., displays difficulty breathing or appears to lose consciousness. See LVMPD 6/002.00, *Use of Force* "Medical Attention")".

44. According to LVMPD policy, a supervisor will respond to a foot pursuit if there is an injury to an officer, citizen, or suspect.

II.     **Las Vegas Metro Police Department Unconstitutional Practices and Customs**

45. LVMPD's Use of Force Review Board has found 97% of more than 500 officer shootings and use of force incidents since 1991 justified.

46. In 2011, the Las Vegas Review-Journal published a 5-part investigation into LVMPD called "Deadly Force: When Las Vegas Police Shoot, and Kill," which found that LVMPD uses deadly force "at a higher rate than many other urban police agencies," and that the LVMPD ranked third out of 16 police departments in both the rate of shootings per capita and in shootings per reported violent crime.

47. After the "Deadly Force" investigation was published in the Review-Journal, the ACLU of Nevada filed a brief with the Department of Justice Special Litigation Section requesting a

pattern and practice investigation into the "grave systemic defects associated with LVMPD's use of deadly force, and the absence of any meaningful review or oversight of those actions."

48.  Simultaneously, the Department of Justice contacted LVMPD to initiate a Collaborative Review of Officer Involved Shootings by LVMPD officers. The Collaborative Review found that LVMPD officers committed multiple tactical errors that required improvement, including but not limited to:

      a.   Radio communications, including not announcing actions over the radio.

      b.   Coordination, including poor handling of the suspect.

      c.   Use of Deadly Force, including use of disproportionate force.

      d.   Medical Response, including assistance not immediately requested and aid not rendered.

49. The 2011 Collaborative Review also identified that LVMPD did not conduct department-wide fair and impartial police training, focusing on deadly force.

50. The 2011 Collaborative Review also identified that a lack of command and control and the coordination of officers can result in tragic outcomes and mistakes—and that this is exacerbated by too many officers being on scene.

51. An LVMPD statistical analysis of use of force and vehicle pursuits from 2015-2019 found that although around 12 percent of the Las Vegas population is Black, each year had a higher percentage of black people shot by LVMPD from 24 percent to 40 percent a year.

52. The analysis also found that in 2016, 90% of people shot by LVMPD officers were non-white; in 2018, 70% of people shot by LVMPD officers were non-white.

53. The analysis also showed that 100% of the fatal officer-involved shootings in 2016 were of non-white people; that number decreased to 82% in 2018 when nearly 50% of all fatal shootings were of Black people.

54. Finally, the analysis found "non-deadly" use of force by LVMPD officers shows similar patterns—non-white people made up 62 – 66 percent of all "non-deadly" use of force incidents from 2015 to 2019. Black people are the most likely, these statistics show, to have "non-deadly" force used against them in an encounter with LVMPD officers.

55. LVMPD classifies empty hand/takedown techniques, Tasers, lateral vascular neck restraints, K-9s, the "less-lethal shotgun," and a 40 mm specialty impact weapon as non-deadly uses of force.

**III.    September 5, 2019**

56. BYRON LEE WILLIAMS' life mattered.

57. Mr. Williams was a Black resident of Las Vegas, Nevada.

58. On September 5, 2019, Mr. Williams was 50 years old.

59. Prior to September 5, 2019, Mr. Williams was physically fit.

60. Prior to September 5, 2019, Mr. Williams had no known history of cardiovascular issues.

61. Prior to September 5, 2019, Mr. Williams had no known history of respiratory issues.

62. In the early morning hours of September 5, 2019, BYRON LEE WILLIAMS, was riding his bicycle near the vicinity of Bonanza Road, just West of Martin Luther King Boulevard, in Las Vegas, Nevada.

63. At the time, at or around 5:48 a.m., as the sun was beginning to rise, there was little to no traffic on the roadways.

64. At the time the officers saw him, BYRON LEE WILLIAMS was not actively acting in an illegal fashion.

65. In the early morning of September 5, 2019, Defendant Officers PATRICK CAMPBELL and BENJAMIN VAZQUEZ of the LVMPD were on patrol in the area.

66. Defendant CAMPBELL was driving the patrol car and Defendant VAZQUEZ was in the front passenger seat of the patrol car.

67. Defendant Officers were not looking for suspects matching the description of BYRON LEE WILLIAMS at the time.

68. At that time, it was not known to Defendant Officers whether BYRON LEE WILLIAMS had any active warrants.

69. At that time, Defendant Officers did not have information to believe BYRON LEE WILLIAMS had committed or was suspected of committing crimes.

/ / /

70. At approximately 5:48 a.m., Defendants CAMPBELL and VAZQUEZ observed Mr. Williams riding his bicycle.

71. At that time, Defendant Officers CAMPBELL and VAZQUEZ observed BYRON LEE WILLIAMS was riding a bicycle without a light in front but with several reflectors on the front, back, wheels and seat.

72. At that time, upon information only of the absence of a light on a bicycle, with little to no traffic, Defendant Officer Vasquez called out the window "Metro police, f***ing stop".

73. Defendant Officers did not immediately tell BYRON LEE WILLIAMS he was under arrest.

74. At all relevant times hereto, BYRON LEE WILLIAMS had no weapon on his person and posed no threat of harm to the officers or to the public.

75. After calling out to BYRON LEE WILLIAMS the Defendant Officers radioed a "Code Red" to fellow officers and began to pursue BYRON LEE WILLIAMS in their police vehicle.

76. A "Code Red" indicates that an emergency exists.

77. Apparently, LVMP is alleging that the existing emergency that prompted the "Code Red" was BYRON LEE WILLIAMS riding his bicycle without a light, despite the fact that it was already becoming light outside.

78. BYRON LEE WILLIAMS rode his bicycle through a gas station parking lot.

79. At this time, BYRON LEE WILLIAMS had not been informed he was under arrest.

80. The Defendant Officers flashed the vehicle's patrol lights but did not fully turn on the lights to indicate BYRON LEE WILLIAMS should stop.

81. At a high rate of speed, Defendant Officers continued to pursue BYRON LEE WILLIAMS in their vehicle as BYRON LEE WILLIAMS rode his bicycle.

82. Defendant Officers rode through an open gas station lot at a high rate of speed.

83. At this time, Defendant Officers were only aware of the alleged violation of the bicycle light ordinance for BYRON LEE WILLIAMS.

84. Regardless, the Defendant Officers continued to pursue in their vehicle.

/ / /

11

85. At approximately 5:49 a.m., BYRON LEE WILLIAMS got off of his bicycle and continued on foot.

86. At this time, BYRON LEE WILLIAMS had not been informed that he was under arrest nor were the police lights fully activated on the Defendant Officers' car.

87. Defendant Police Officers pursued BYRON LEE WILLIAMS on foot, on suspicion of nothing more than a bicycle ordinance violation.

88. Defendant Police Officers pursued BYRON LEE WILLIAMS on foot, despite the abandonment of the bicycle.

89. Defendant Officer VASZQUEZ and CAMPBELL pursued BYRON LEE WILLIAMS on foot over a wall into a condo complex for the bicycle ordinance violation.

90. At approximately 5:50 a.m., Defendant Officers VASQUEZ and CAMPBELL observed BYRON LEE WILLIAMS go to the ground face first on his stomach.

91. The foot chase had covered about 270 yards and lasted no more than two minutes.

92. BYRON LEE WILLIAMS lay down on the ground and completely surrendered.

93. At all times, BYRON LEE WILLIAMS did not threaten either of the officers.

94. At all times, BYRON LEE WILLIAMS had no weapon on his person.

95. At all times, BYRON LEE WILLIAMS posed no threat of harm to the officers or to the public.

96. Despite the compliance demonstrated by BYRON LEE WILLIAMS and the absence of a threat, Defendant Officers CAMPBELL and VASQUEZ immediately utilized force techniques including empty-hand techniques, positional restraint, and knees to the shoulders, back and buttocks.

97. At or around 5:50 a.m., Defendant Officer CAMPBELL forcibly restrained BYRON LEE WILLIAMS in a prone position, first placing his knee on BYRON LEE WILLIAMS' head as Defendant VASQUEZ caught up to him.

98. At or around 5:50 a.m., Defendant Officer CAMPBELL continued to forcibly restrain BYRON LEE WILLIAMS in a prone position, moving his knee to his back, between his shoulder blades.

99. Mr. Williams yelled "Ow!" and "Why are you doing this? I didn't do nothing" while Defendant Officers CAMPBELL and VASQUEZ forcibly pulled on BYRON LEE WILLIAMS' arms while attempting to handcuff him.

100.     Defendant Officer CAMPBELL put his body weight on the back of BYRON LEE WILLIAMS with his knee in his back, applying pressure on Mr. Williams' lungs, ribs, and diaphragm, and obstructing his ability to breathe.

101.     Immediately after Defendant Officer CAMPBELL placed his knee in the middle of BYRON LEE WILLIAMS' back, Mr. Williams stated, "I can't breathe!"

102.     At that time, despite the fact that Mr. Williams had already surrendered and had Defendant Officer CAMPBELL's body weight bearing down on Mr. Williams' back, Defendant Officer VAZQUEZ forcibly restrained Mr. Williams in a prone position, placing his knee on BYRON LEE WILLIAMS' buttocks and limiting Mr. Williams' ability to adjust his body to breathe.

103.     Defendant Officers ignored Mr. Williams' clear signs of distress, including labored breathing and moaning, and put BYRON LEE WILLIAMS in handcuffs.

104.     BYRON LEE WILLIAMS indicated repeatedly that he could not breathe. One of the Defendant Officers responded, "Yeah because you f***ing started running".

105.     One of the Defendant Officers responded, "it's just a little pressure on your back".

106.     Another Defendant Officer stated, "Ain't no help coming for you. Stop crying."

107.     Defendant Officers VASQUEZ and CAMPBELL did not call an ambulance at this time.

108.     Defendant Officers VASQUEZ and CAMPBELL kept sustained pressure through their knees on the back and buttocks of BYRON LEE WILLIAMS for at least one minute, even after Mr. Williams' hands had been cuffed behind his back.

109.     Defendant Officers VASQUEZ and CAMPBELL kept BYRON LEE WILLIAMS in the prone position, face down, for another full minute despite his repeated complaints that he could not breathe.

/ / /

13

110.     One of the Defendant Officers stated "Get up motherfucker" and BYRON LEE WILLIAMS responded "I can't breathe."

111.     BYRON LEE WILLIAMS could not get up.

112.     Defendant Officer ROCKY ROMAN arrived and put his knee on BYRON LEE WILLIAMS' lower back, applying pressure on Mr. Williams' lungs, ribs, and diaphragm, and obstructing his ability to breathe.

113.     BYRON LEE WILLIAMS stated he could not breathe.

114.     Defendant Officer ROCKY ROMAN moved his knee to BYRON LEE WILLIAMS' buttocks, limiting his ability to adjust his body to breathe.

115.     Additional Defendant Officers including S. Corey, P. Bruen, B. Holguin, and Defendant ALEXANDER GONZALEZ arrived on scene.

116.     Despite BYRON LEE WILLIAMS' repeated statements to Defendant Officers that he could not breathe, Defendant Officers did not treat Mr. Williams' inability to breathe as a medical emergency.

117.     Additional officers arrived and did not provide medical assistance or contact an ambulance for BYRON LEE WILLIAMS.

118.     At 5:51 a.m., officers radioed that BYRON LEE WILLIAMS was in custody and generated a "Code 4", meaning "an emergency no longer exists".

119.     Additional officers arrived and the officers started giving each other high fives.

120.     BYRON LEE WILLIAMS collapsed and was clearly unconscious and missing one shoe.

121.     BYRON LEE WILLIAMS informed Defendant Officers approximately 24 times that he could not breathe before he lost consciousness.

122.     Defendant Officers, including Officers ROCKY ROMAN and ALEXANDER GONZALEZ, dragged BYRON LEE WILLIAMS up with their hands under his arms without supporting his legs or allowing him to put his feet on the ground.

123.     Defendant Officer Gonzalez barked at Mr. Williams, "If you don't stand up, we're gonna drag you".

124.     BYRON LEE WILLIAMS' body was limp at this time.

125.     To Defendant Officers, individuals who go on foot pursuits often "fake some type of medical issue" to go to the hospital and not get "booked."

126.     One of the Defendant Officers stated that BYRON LEE WILLIAMS has "incarceritis" or faking a medical ailment to avoid jail.

127.     The Defendant Officers' body camera footage captures several officers joking about the pursuit, laughing, and congratulating each other while BYRON LEE WILLIAMS struggles to breathe and eventually stops breathing altogether.

128.     At or around 5:52 a.m., Defendant Officers proceeded to drag BYRON LEE WILLIAMS around with his head hanging onto his chest limply and his feet dragging on the ground, again without calling an ambulance.

129.     BYRON LEE WILLIAMS was not moving or making sounds at this time and appeared to be unconscious, at best.

130.     Defendant Officers GONZALEZ and ROMAN dragged BYRON LEE WILLIAMS' around the corner of the nearby apartment building with his feet dragging and head hanging limp.

131.     At 5:52 a.m., Defendant Officer CAMPBELL broadcast on the police radio system that there had been a "negative use of force by officers".

132.     At or around 5:53 a.m., Defendant Officers GONZALEZ and ROMAN put BYRON LEE WILLIAMS back in the prone position, face-down on the pavement despite having gone completely limp.

133.     Defendant Officers did not check for Mr. Williams' vital signs or place him on his side in a recovery position that would have made it easier for Mr. Williams to breathe.

134.     Defendant Officers stated "is he dead or something? .... still going to jail".

135.     At or around 5:54 a.m., Officer Corey called an ambulance and requested medical care.  It was the first such request.

/ / /

/ / /

136.     It was only after Officer Corey made the first call for an ambulance that Defendant Officers finally placed BYRON LEE WILLIAMS in a recovery position for the first time at or around 5:55 a.m.

137.     Defendant Officers then just stood around BYRON LEE WILLIAMS, who was not moving or making a sound.

138.     Defendant Officers did not start resuscitation efforts started and did not provide any other aid to Mr. Williams.

139.     An officer said that BYRON LEE WILLIAMS still had a radial pulse in his wrist.

140.     Defendant Officer ROMAN had his knee and/or shin against the chest of BYRON LEE WILLIAMS to hold him on his side and stated "Yeah he's still breathing, I can feel it on my shin."

141.     Defendant Officer ROMAN later described that BYRON LEE WILLIAMS' breath as it "wasn't like regular breathing like normal human beings" but still did not attempt to administer aid to Mr. Williams.

142.     Defendant Officer GONZALEZ then, for the first time, checked the neck of BYRON LEE WILLIAMS for a carotid pulse and to see if he was breathing.

143.     Officers described BYRON LEE WILLIAMS' pulse as "erratic and weird" to a supervisor.

144.     Defendant Officer GONZALEZ stated "is he breathing?" and shined a light into the eyes of BYRON LEE WILLIAMS, and Mr. Williams did not blink or respond in any way.

145.     Defendant Officer GONZALEZ asked if BYRON LEE WILLIAMS was "faking a medical episode" or "playing dead or somethin'".

146.     Eventually, Defendant Officer GONZALEZ noticed that BYRON LEE WILLIAMS was not breathing was unresponsive, and appeared to be unconscious, at best.

147.     But the officers simply continued to stand near BYRON LEE WILLIAMS and not administer any aid.

148.     At that time, Defendant Officers failed to notify and/or update dispatch and paramedics or radio that BYRON LEE WILLIAMS was unresponsive.

149.     At or around 6:02 a.m., paramedics were updated on the location of BYRON LEE WILLIAMS within the apartment complex.

150.     At or around 6:05 a.m., paramedics arrived at the condo complex and had to look on foot to locate BYRON LEE WILLIAMS.

151.     On multiple occasions during the incident, all Defendant Officers chose to turn off their body-worn cameras, which is against the policy of the Las Vegas Metropolitan Police Department.

152.     From 5:58 a.m.- 6:09 a.m., approximately 10 minutes and 28 seconds of body camera footage of the incident are missing, between the time that officers checked if BYRON LEE WILLIAMS was breathing and the arrival of paramedics.

153.     At no time before paramedics arrived, did Defendant Officers provide first aid, resuscitation efforts, or CPR.

154.     At or around 6:09 a.m., Defendant Officers' body cameras were turned back on.

155.     At or around 6:09 a.m., paramedics are visible checking his person and vitals.

156.      Defendant Officers still had BYRON LEE WILLIAMS handcuffed as paramedics checked his vital signs and assessed him. The paramedics immediately asked for Defendant Officers to remove the handcuffs on BYRON LEE WILLIAMS.

157.     At or around 6:09 a.m., at the request of the paramedics, Defendant Officer GONZALEZ began the first attempt to resuscitate Mr. Williams.

158.     At or around 6:09 a.m., paramedics finally are able to begin providing medical aid to BYRON LEE WILLIAMS.

159.     As the paramedics are trying to revive BYRON LEE WILLIAMS, Defendant Officer ROMAN, while bringing another officer up to speed, points at the ambulance and says, "he's possibly dead now," and laughs.

160.     BYRON LEE WILLIAMS became pulseless on scene as Defendant Officers looked on and laughed because they had called an ambulance too late to resuscitate Mr. Williams.

161.     On September 5, 2019, at 6:41 a.m., BYRON LEE WILLIAMS was pronounced dead at Valley Hospital.

162.     The medical examiner ruled Mr. Williams' death a homicide with the prone restraint as a significant condition contributing to BYRON LEE WILLIAMS' death.

163.     The medical examiner indicated that Mr. Williams' death occurred through a restraint in a prone position while intoxicated after physical exertion and that prone restraint did contribute to the demise of BYRON LEE WILLIAMS.

**IV.     Investigation into the Death of Byron Lee Williams**

164.     The Use of Force Review Board, after reviewing the death of BYRON LEE WILLIAMS, gave a finding of "Administrative Approval".

165.     The Use of Force Review Board in their finding of "Administrative Approval" ratified Defendant Officers' use of force.

166.     The Use of Force Review Board only considered "empty hand techniques" used by Defendant Officers VASQUEZ and CAMPBELL in their review of force.

167.     The Use of Force Review Board did not review as a "use of force" Defendant Officers' use of positional restraint or the use of their knees to pin BYRON LEE WILLIAMS down to the ground and restrict his breathing.

168.     Detectives determined at the end of their internal investigation into Mr. Williams' in-custody death that force was not used.

169.     The Use of Force Review Board did not provide a finding regarding the use of positional restraint tactics including knees to the shoulder blades, back and neck, to hold BYRON LEE WILLIAMS down restricting his breathing and whether said force had a finding of "Administrative Approval".

170.     The LVMPD Office of Internal Oversight Review indicated in its report that officers near BYRON LEE WILLIAMS as he lay on his stomach and became unresponsive

should have immediately rolled Mr. Williams onto his side after seeing him detained on his stomach.

171.     The LVMPD Office of Internal Oversight Review indicated in its report that officers should have updated over the radio the change in Williams' medical condition when he became unresponsive.

172.     The LVMPD Office of Internal Oversight Review indicated in its report that the officers' medical response was not within standardized LVMPD tactics, training, and policy.

173.     The LVMPD Office of Internal Oversight Review indicated in its report that multiple officers in the vicinity of BYRON LEE WILLIAMS deactivated their body-worn cameras when he became unresponsive even though there was the potential to document critical information.

174.     The administrative review determined the Defendant officers' deactivation of their body-worn cameras, while in contact with BYRON LEE WILLIAMS, was not within standardized LVMPD tactics, training, and policy.

175.     As a direct result of the death of BYRON LEE WILLIAMS, changes were made to LVMPD policies and information provided to officers, including an awareness report regarding the proper care for a suspect after being taken into custody that was circulated throughout the department on September 23, 2019.

176.     As a direct result of the death of BYRON LEE WILLIAMS, information related to positional asphyxia was circulated throughout the department including the following, which Plaintiffs are informed and believe officers did not previously have:

      a.   That simply placing a restrained subject in a posture that makes it harder for them to breathe encompasses positional asphyxia;

b.  That contributing factors include a subject being tied or handcuffed in a prone position;

c.  That drug or alcohol induced behavior may increase a subject's susceptibility to sudden death;

d.  That getting a handcuffed person off of his or her stomach and onto his or her side or sitting up is vital;

e.  That officers should continuously monitor a person in their custody and should update dispatch if the person's condition changes; and,

f.  That a person who is "out of breath" could be in medical crisis beyond being out of breath, such as labored breathing, cardiac arrest, or signs of excited delirium.

177.    As a direct result of the death of BYRON LEE WILLIAMS, updates were made to the LVMPD Use of Force policies, including the following:

a.  That officers will not restrain people in a manner that restricts their ability to breathe;

b.  That prone, handcuffed persons will be placed in a recovery position such as on their side or upright;

c.  That pressure will not be applied to the back, neck, or head of a person in custody;

d.  That officers will consider using two sets of handcuffs, so that a person's arms are not pulled as tightly behind the back, to avoid escalating the medical crisis;

e.  That officers will monitor breathing and check for a pulse, including immediately assessing persons who become quiet or who no longer offer resistance; and,

f.  That officers will coordinate with medical personnel to transfer custody and assist medical personnel to avoid delays in transportation to a hospital.

178.     As a direct result of the death of BYRON LEE WILLIAMS, updates were made to the LVMPD Medical Attention policies, including the following:

    a.   That whenever an officer applies force upon a person resulting in observable signs of difficulty breathing, continuous monitoring of the person and immediate summoning of medical attention for the person are required;

    b.   That persons in a prolonged physical encounter may be at an increased risk of medical distress;

    c.   That incidents involving persons with difficulty breathing should be considered medical emergencies;

    d.   That officers will monitor for signs of life and update responding emergency medical personnel via dispatch with any changes in the subject's condition;

    e.   That officers will provide the nature of the injury, the person's age and gender, and other circumstances that could be of potential medical risk to the person in custody (e.g., suspected drug use, labored breathing, or involvement in a foot pursuit) when requesting medical assistance; and,

    f.   That officers should render medical aid within the scope of training and skill level while awaiting the next level of medical care.

179.     As a direct result of the death of BYRON LEE WILLIAMS, updates were made to the LVMPD Body Worn Cameras policy, including requiring officers to continue recording until they are cleared from the scene and discontinued contact with the subject.

180.     As a direct result of the death of BYRON LEE WILLIAMS, updated language was added to the LVMPD Foot Pursuit policy: *"persons who are in prolonged physical encounters with officers may be at risk of medical distress. Officers will summon medical*

*attention if the subject is injured or complains of injury (e.g., displays difficulty breathing or appears to lose consciousness...)."*

181.     As a result of "some" behaviors and comments made at or around BYRON LEE WILLIAMS, the LVMPD Office of Internal Oversight Review required Defendant Officers and supervisors to attend a new class emphasizing the following: holding the dignity of all persons in the highest regard; respecting the value of every human life; respect for individual rights; duty to intervene; racial profiling; and biased-based and fair and impartial policing.

182.     None of the Defendant Officers were criminally prosecuted or, upon information and belief, disciplined for their roles in connection with the death of BYRON LEE WILLIAMS.

**FIRST CAUSE OF ACTION**
**Wrongful Death- Battery**
***Plaintiffs v. Defendant Officers Campbell, Vasquez, and Roman***

183.     Plaintiffs hereby adopt and re-allege paragraphs 1 through 182 as though fully set forth herein.

184.     At all relevant times, Defendant Officers CAMPBELL, VASQUEZ and ROMAN were authorized officers, agents, and employees of the Las Vegas Metropolitan Police Department and were acting in the course of their employment.

185.     Defendant Officers CAMPBELL, VASQUEZ and ROMAN had no legal justification for using deadly force against BYRON LEE WILLIAMS, and their use of force while carrying out their duties was an unreasonable and unprivileged use of force.

186.     Defendant Officers CAMPBELL, VASQUEZ and ROMAN intentionally and recklessly did acts as described herein which resulted in offensive physical conduct made without the consent of decedent, BYRON LEE WILLIAMS.

187.     The actions of the Defendant Officers CAMPBELL, VASQUEZ and ROMAN were undertaken intentionally and willfully and wantonly to cause a harmful or offensive contact with the body of decedent, BYRON LEE WILLIAMS.

/ / /

188.    BYRON LEE WILLIAMS did not consent to Defendant Officers CAMPBELL, VASQUEZ and ROMAN's use of force when the Defendant Officers placed their body weights on his head, back, and buttocks while Mr. Williams lay in the prone position during the arrest.

189.    BYRON LEE WILLIAMS did not consent to remaining under positional restraint after he surrendered himself into Defendant Officers CAMPBELL, VASQUEZ and ROMAN's custody.

190.    As a direct and proximate result of the force and positional restraint used on BYRON LEE WILLIAMS by Defendant Officers CAMPBELL, VASQUEZ and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD BYRON LEE WILLIAMS sustained substantial injuries, ultimately died, and lost his earning capacity.

191.    The conduct of Defendant Officers CAMPBELL, VASQUEZ and ROMAN was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and BYRON LEE WILLIAMS, entitling Plaintiffs, individually and as Special Administrators, to an award of punitive damages as to Defendant Officers CAMPBELL, VASQUEZ and ROMAN.

192.    At the time of his death, BYRON LEE WILLIAMS, deceased, left his surviving siblings and nieces and nephews, and have been and will be deprived of benefits of the decedent's services, income, support, society, companionship, love, and affection during and for the remainder of their lives.

### SECOND CAUSE OF ACTION
### Wrongful Death- Negligence
***Plaintiffs v. Defendant City of Las Vegas, Defendant Clark County, Defendant LVMPD, and Defendant Officers Campbell, Vasquez, Gonzalez, and Roman***

193.    Plaintiffs hereby adopt and re-allege paragraphs 1 through 192 as though fully set forth herein.

194.    At all relevant times, Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD, acting by and through their duly authorized officers, agents, representatives and/or employees, including but not limited to Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, owed a duty of care to Plaintiffs to use reasonable care

to prevent harm or injury to others and refrain from malicious and oppressive conduct which would endanger the safety of others, including decedent BYRON LEE WILLIAMS.

195.     At all relevant times, it was the duty of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD to use reasonable care to prevent harm or injury to others and to refrain from malicious and oppressive conduct which would endanger the safety of others, including BYRON LEE WILLIAMS.

196.     Police officers in Nevada owe a duty of care to the general public, including BYRON LEE WILLIAMS.

197.     Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD breached the aforementioned duty by committing one or more of the following negligent, malicious and oppressive actions:

        a.  With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN used unreasonable and deadly forcible and positional restraint on decedent BYRON LEE WILLIAMS under circumstances where the decedent posed no threat or danger either to the Officers or the public;

        b.  With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN did not provide medical aid, call for medical aid, or place BYRON LEE WILLIAMS in the recovery position, despite knowledge of his medical distress under circumstances where the decedent posed no threat or danger either to the officers on the scene or the public;

        c.  With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN used deadly force against

24

decedent BYRON LEE WILLIAMS under circumstances where the decedent posed no threat or danger to the Officers or the public;

d.  With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN forcefully arrested and detained BYRON LEE WILLIAMS, who was unarmed and posing no threat or danger to the Officers or the public and was only suspected of an ordinance violation, without advising Mr. Williams of what he had done wrong at any point; and,

e.  With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN, used deadly force against BYRON LEE WILLIAMS under circumstances where Mr. Williams had already surrendered himself and was already subdued.

198.   As a direct and proximate result of the conduct alleged above by Defendant Officers CAMPBELL, VASQUEZ, and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD, BYRON LEE WILLIAMS sustained substantial injuries and ultimately expired.

199.   At the time of his death, BYRON LEE WILLIAMS, deceased, left his surviving siblings and nieces and nephews, and have been and will be deprived of benefits of the decedent's services, income, support, society, companionship, love and affection during and for the remainder of their lives.

200.   As a direct and proximate result of Defendants' conduct as alleged above, BYRON LEE WILLIAMS' surviving siblings and nieces and nephews suffered emotional distress and mental anguish.

### THIRD CAUSE OF ACTION
### Negligence – Survival
### *Plaintiffs v. Defendants City of Las Vegas, Clark County, LVMPD, and Officers Campbell, Vasquez, Gonzalez, and Roman*

201.   Plaintiffs hereby adopt and re-allege paragraphs 1 through 200 as though fully set forth herein.

202.     At all relevant times, Defendants CITY OF LAS VEGAS, CLARK COUNTY, and LVMPD, acting by and through their duly authorized officers, agents, representatives and/or employees, including but not limited to Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, owed a duty of care to Plaintiffs to use reasonable care to prevent harm or injury to others and refrain from malicious and oppressive conduct which would endanger the safety of others, including decedent BYRON LEE WILLIAMS.

203.     At all times relevant times, it was the duty of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD to use reasonable care to prevent harm or injury to others and to refrain from malicious and oppressive conduct which would endanger the safety of others, including decedent BYRON LEE WILLIAMS.

204.     Police officers in Nevada owe a duty of care to the general public, including to BYRON LEE WILLIAMS.

205.     Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, breached the aforementioned duty by committing one or more of the following negligent, malicious and oppressive actions:

      a.  With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN used unreasonable and deadly forcible and positional restraint on decedent BYRON LEE WILLIAMS under circumstances where the decedent posed no threat or danger either to the Officers or the public;

      b.  With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN did not provide medical aid, call for medical aid, or place decedent BYRON LEE WILLIAMS in the recovery position, despite knowledge of his medical

distress under circumstances where the decedent posed no threat or danger either to the Officers or the public;

   c.   With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN used deadly force against decedent BYRON LEE WILLIAMS under circumstances where the decedent posed no threat or danger to the Officers or the public;

   d.   With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN forcibly arrested and detained BYRON LEE WILLIAMS, who was unarmed and posing no threat or danger to the Officers or the public and was only suspected of an ordinance violation, without advising Mr. Williams of what he had done wrong; and,

   e.   With utter indifference and conscious disregard for harm or injury, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN, used deadly force against decedent BYRON LEE WILLIAMS under circumstances where Mr. Williams had surrendered himself and was already subdued.

206.    Prior to his death, BYRON LEE WILLIAMS was caused to be injured, experiencing extreme and severe pain and physical and emotional suffering before his death, and sustained damages of a personal and pecuniary nature, and had he lived, he would have been entitled to bring this action and said action has survived him.

207.    As a direct and proximate result of the actions of Defendant Officers CAMPBELL, VASQUEZ, and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD, BYRON LEE WILLIAMS, suffered survival damages pursuant to N.R.S. 41.130.

## FOURTH CAUSE OF ACTION
### Battery – Survival
### *Plaintiffs v. Defendant Officers Campbell, Vasquez, and Roman*

208.    Plaintiffs hereby adopt and re-allege paragraphs 1 through 207 as though fully set forth herein.

209.     At all relevant times, Defendant Officers CAMPBELL, VASQUEZ and ROMAN were authorized officers, agents, and employees of Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD and were acting in the course of their employment.

210.     Defendant Officers CAMPBELL, VASQUEZ and ROMAN had no legal justification for using deadly force against BYRON LEE WILLIAMS, and their use of force while carrying out their duties was an unreasonable and unprivileged use of force.

211.     Defendant Officers CAMPBELL, VASQUEZ and ROMAN intentionally and recklessly committed acts as described herein which resulted in offensive physical conduct made without the consent of decedent, BYRON LEE WILLIAMS.

212.     The actions of the Defendant Officers CAMPBELL, VASQUEZ and ROMAN were undertaken intentionally and willfully and wantonly to cause a harmful or offensive contact with the body of decedent, BYRON LEE WILLIAMS.

213.     BYRON LEE WILLIAMS did not consent to Defendant Officers CAMPBELL, VASQUEZ and ROMAN's use of force when the Defendant Officers placed their body weight on his head, back, and buttocks while he lay in the prone position during the arrest.

214.     BYRON LEE WILLIAMS did not consent to remaining under positional restraint for several minutes after he was placed into Defendant Officers CAMPBELL, VASQUEZ and ROMAN's custody.

215.     The conduct of Defendant Officers CAMPBELL, VASQUEZ and ROMAN was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and BYRON LEE WILLIAMS, entitling Plaintiffs, individually and as Co-Special Administrators, to an award of punitive damages as to Defendant Officers CAMPBELL, VASQUEZ and ROMAN.

216.     Prior to his death, BYRON LEE WILLIAMS, deceased, as a direct, legal and proximate result of such acts of Defendants, was caused to be injured, experiencing extreme and severe pain and physical and emotional suffering before his death, and sustained damages of a

personal and pecuniary nature, and had he lived, he would have been entitled to bring this action and said action has survived him.

217.     As a direct and proximate result of the force and positional restraint used by Defendant Officers CAMPBELL, VASQUEZ and ROMAN, individually and as officers, agents and/or employees of Defendant CITY OF LAS VEGAS, on the Plaintiffs' decedent, BYRON LEE WILLIAMS, suffered survival damages pursuant to N.R.S. 41.100.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 - Excessive Force in Violation of the Fourth Amendment
### *Plaintiffs v. Defendant Officers Campbell, Vasquez, and Roman*

218.     Plaintiffs hereby adopt and re-allege paragraphs 1 through 217 as though fully set forth herein.

219.     The conduct by the officers identified in this count and described herein constituted excessive and deadly force in violation of the Fourth Amendment of the United States Constitution, and clearly established law.

220.     At all times relevant, Defendant Officers CAMPBELL, VASQUEZ and ROMAN were authorized officers, agents, and/or employees Defendant CITY OF LAS VEGAS, Defendant CLARK COUNTY, and Defendant LVMPD, and were acting in the course of their employment, within the scope of their authority as duly-certified law enforcement officers, and under color of state law.

221.     At all times relevant, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN had no reason to believe that Mr. Williams was armed or dangerous.

222.     At all times relevant, Defendant Officers CAMPBELL, VASQUEZ, and ROMAN did not have a reasonable fear of imminent bodily harm when they kneeled on Mr. Williams, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Williams as he had already surrendered himself and lay prone on the ground of his own volition.

223.     Defendant Officers CAMPBELL, VASQUEZ, and ROMAN used an unreasonable amount of force in relation to the threat or force posed by BYRON LEE

WILLIAMS, who had surrendered himself, was in custody, was incapacitated, and not resisting lawful arrest or threatening the life or safety of any police officers or other citizens.

224.     Every reasonable officer would have known that using force against a compliant, handcuffed individual who is not resisting arrest constitutes excessive force in violation of the Fourth Amendment.

225.     Defendant Officers CAMPBELL, VASQUEZ and ROMAN's use of force in applying direct pressure to and kneeling on Mr. Williams' back was objectively unreasonable and violated clearly established law.

226.     It was objectively unreasonable for Defendant Officers CAMPBELL, VASQUEZ and ROMAN to maintain BYRON LEE WILLIAMS in a prone position without properly monitoring his breathing or pulse.

227.     It was a violation of BYRON LEE WILLIAMS' Fourth and Fourteenth Amendment rights for Defendant Officers CAMPBELL, VASQUEZ and ROMAN not to render medical aid following any one or more of Mr. Williams' 24 complaints that he could not breathe and Mr. Williams' loss of consciousness, each of which demonstrated a serious medical need.

228.     As a result of Defendant Officers CAMPBELL, VASQUEZ and ROMAN's unjustified, excessive illegal, and deadly use of force, BYRON LEE WILLIAMS died.

229.     In addition to these uses of unjustified, excessive, illegal, and deadly uses of force, each of the Defendant Officers had a duty to intervene on behalf of a citizen whose constitutional rights were being violated in their presence by another officer.

230.     Defendant Officers CAMPBELL, VASQUEZ and ROMAN each observed and were in a position to intervene to stop the use of constitutionally unreasonable deadly force against Mr. Williams.

231.     None of the Defendant Officers ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Williams at any point in time.

232.     Defendant Officers' failure to intervene in the use of constitutionally unreasonable deadly force violated Mr. Williams' clearly established Fourth Amendment rights.

233.     As a result of Defendant Officers' failure to intervene, Mr. Williams experienced conscious pain and suffering.

234.     As a result of Defendant Officers' unjustified failure to intervene in the excessive use of force, BYRON LEE WILLIAMS died.

235.     As a direct and proximate result of the acts and omissions described herein, BYRON LEE WILLIAMS suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

236.     Punitive damages are available against Defendant Officers CAMPBELL, VASQUEZ and ROMAN and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

237.     Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

238.     The conduct described in all of the preceding paragraphs amount to wrongful acts for the purposes of Nevada Revised Statute § 41.085.

239.     As a proximate result of Defendants' unreasonable and excessive use of force, BYRON LEE WILLIAMS experienced injuries, including physical and psychological pain and suffering, and ultimately death.

240.     As a direct and proximate result of these wrongful acts and omissions, BYRON LEE WILLIAMS' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by jury.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Disregard of Medical Needs in Violation of the Fourteenth Amendment**
***Plaintiffs v. Defendant Officers Campbell, Vasquez, Gonzalez, and Roman***

241.     Plaintiffs hereby adopt and re-allege paragraphs 1 through 240 as though fully set forth herein.

242.     At all times relevant, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN were authorized officers, agents, and/or employees of Defendant

CITY OF LAS VEGAS, and were acting in the course of their employment, within the scope of their authority as duly-certified law enforcement officers, and under color of state law.

243.      At all times relevant, it was the duty of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, individually and as officers, agents and/or employees of the Defendant CITY OF LAS VEGAS, not to disregard the medical needs of arrestees.

244.      On September 5, 2019, in breach of said duty, Defendant OFFICERS CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN unreasonably disregarded the medical needs of BYRON LEE WILLIAMS by engaging in the following acts or omissions:

   a.    Placing BYRON LEE WILLIAMS in a prone restraint position;

   b.   Placing weight on the head, neck, back, buttocks, and legs of BYRON LEE WILLIAMS, restricting his ability to breathe;

   c.   Forcibly restraining BYRON LEE WILLIAMS;

   d.   Failing to place BYRON LEE WILLIAMS in the recovery position after they had placed the handcuffs on his hands;

   e.   Failing to place BYRON LEE WILLIAMS in the recovery position after he told Defendant Officers that he could not breathe several times;

   f.   Failing to consider BYRON LEE WILLIAMS' cardiorespiratory distress a medical emergency;

   g.   Failing to provide any medical aid, including CPR and/or chest compressions until EMTs arrived nearly 10 minutes after BYRON LEE WILLIAMS had been placed in handcuffs and after Mr. Williams had advised Defendant Officers that he was having difficulty breathing;

   h.   Failing to provide any medical aid, including sternum rubs, CPR, and/or chest compressions for several minutes after Mr. Williams had lost consciousness, presented symptoms of cardiorespiratory distress, and began to go into cardiac arrest;

   i.   Failing to call medics until BYRON LEE WILLIAMS had been in prone restraint for several minutes;

/ / /

j.  Failing to take any action to abate the risk of serious injury or death to BYRON LEE WILLIAMS as he was experiencing and presenting symptoms of cardiorespiratory distress; and/or

k.  Failing to use less dangerous means of restraint.

245.    At all times relevant, the aforementioned conduct of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, constituted unreasonable disregard for BYRON LEE WILLIAMS' serious medical needs in violation of the United States Constitution.

246.    BYRON LEE WILLIAMS informed Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN approximately 24 times that he could not breathe, from immediately after Defendant Officer CAMPBELL placed his knee in the middle of Mr. Williams' back until he lost consciousness minutes later.

247.    Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN were deliberately indifferent to BYRON LEE WILLIAMS' serious medical needs. Defendant Officers each subjectively knew that Mr. Williams was suffering a serious medical need because he exhibited continued labored breathing and told the Defendant Officers approximately 24 times that he could not breathe.

248.    Despite knowing that BYRON LEE WILLIAMS was suffering from a serious medical need, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN recklessly and deliberately disregarded that risk by failing to take reasonable measures to abate it. Instead, they failed to stop using force, then delayed calling for medical assistance.

249.    Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN refused to treat BYRON LEE WILLIAMS' serious medical needs, ignored his complaints, and their conduct clearly evinced a wanton disregard for Mr. Williams' serious medical needs.

250.    Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN's refusal to provide reasonable medical aid to BYRON LEE WILLIAMS caused Mr. Williams' condition to worsen until the paramedics arrived. By that point, Mr. Williams was in cardiac arrest and could not be resuscitated.

/ / /

251.    As a direct and proximate result of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN's actions and failures to act, BYRON LEE WILLIAMS died.

252.    The actions of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN were objectively unreasonable and were undertaken intentionally with wanton disregard for decedent BYRON LEE WILLIAMS' constitutional rights.

253.    The actions of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN would not be considered reasonable by a reasonably competent police officer in the circumstances presented to Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN.

254.    The actions of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN were undertaken with malice, willfulness, wantonness, and reckless indifference to the rights, safety, and medical needs of BYRON LEE WILLIAMS and warrant the imposition of punitive damages as to Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN.

255.    As a direct and proximate result of the acts and omissions described herein, BYRON LEE WILLIAMS suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

256.    Punitive damages are available against Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ and ROMAN and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

257.    Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

258.    The conduct described in all of the preceding paragraphs amount to wrongful acts for the purposes of Nevada Revised Statute § 41.085.

259.    As a proximate cause of Defendants' unreasonable disregard of BYRON LEE WILLIAMS' serious medical needs, Mr. Williams experienced injuries, including physical and psychological pain and suffering, before his death.

/ / /

260.     As a direct and proximate result of these wrongful acts and omissions, BYRON LEE WILLIAMS' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by jury.

**SEVENTH CAUSE OF ACTION**
**42 U.S.C. §1983- Municipal Liability Under _Monell_**
***Plaintiffs v. Defendant City of Las Vegas, Defendant Clark County, Defendant LVMPD, and Defendant Sheriff Joe Lombardo***

261.     Plaintiffs hereby adopt and re-allege paragraphs 1 through 260 as though fully set forth herein.

262.     The conduct by Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN in this Count and described herein constituted excessive and deadly force in violation of the United States Constitution, as incorporated through the Fourteenth Amendment.

263.     At all times relevant, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN were authorized officers, agents, and/or employees of Defendant CITY OF LAS VEGAS, and were acting in the course of their employment, within the scope of their authority as duly-certified law enforcement officers, and under color of state law.

264.     The Sheriff, JOE LOMBARDO, had final policymaking authority, as agent of the CITY OF LAS VEGAS, CLARK COUNTY, and LVMPD with regard to establishing written and unwritten policies and training programs governing the conduct of LVMPD officers performing policing functions on behalf of the CITY OF LAS VEGAS, CLARK COUNTY, and LVMPD.

265.     The Sheriff, JOE LOMBARDO, established and/or approved of LVMPD's written and unwritten policies and training governing the conduct of LVMPD officers performing policing functions.

266.     At all times relevant, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN acted under color of law, as agents of LVMPD, the CITY OF LAS VEGAS, and CLARK COUNTY.

267.     At all times relevant, Sheriff JOE LOMBARDO was acting under color of state law, as agents of LVMPD, the CITY OF LAS VEGAS, and CLARK COUNTY.

268.     At all times relevant, the Defendant Officers wore their official department uniforms and were acting within the course and scope of their duties as LVMPD officers.

269.     That at all times relevant herein the LVMPD, under Sheriff Joe Lombardo, had unwritten policies, customs and practices of the following:

- Discriminating against non-white subjects in both lethal and non-lethal uses of force;

- Allowing inherently dangerous foot pursuits for minor ordinance violations;

- Failing to train law enforcement officers about the danger and likely injury when subjecting individuals to prone restraint and placing the officer's body weight on subjects' backs leading to cardiorespiratory distress;

- Failing to train law enforcement officers about the danger and likely injury of failing to use a recovery position or proper tactics if a positional restraint is utilized;

- Failing to train law enforcement officers to provide medical aid or get assistance;

- Failing to train law enforcement officers on the sanctity of life;

- Allowing the use of dangerous and excessive force during and after the arrest of subjects;

- Allowing law enforcement officers to refuse to provide emergency medical assistance, including CPR and chest compressions, after an in-custody subject exhibits symptoms of cardiorespiratory failure, has lost consciousness, and/or become unresponsive;

- Allowing law enforcement officers to choose not to immediately call for medical assistance when a subject is injured during an arrest; and/or

- Encouraging police officers not to intervene with the use of excessive force by LVMPD officers.

270.     The CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, acting by and through Sheriff JOE LOMBARDO and/or other policymakers, had knowledge of LVMPD's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

271.     The CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, acting by and through Sheriff JOE LOMBARDO and/or other policymakers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from LVMPD's

unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

272.     On or prior to September 5, 2019, the CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

273.     On or prior to September 5, 2019, the CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, fostered or ratified a number of customs, patterns, or practices that condoned and required officers to treat members of the Black Community of Las Vegas differently, including but not limited to implementing deadly and non-deadly force at a higher rate against Black men who did not pose a threat to officers.

274.     On or prior to September 5, 2019, the CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, with deliberate indifference to the rights of arrestees, detainees, and the like, failed to supervise, terminate, or properly discipline its officers for unconstitutional, unlawful, or otherwise improper conduct, and thereby encouraged Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN to continue engaging in unlawful acts toward arrestees and detainees, including BYRON LEE WILLIAMS.

275.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, failed to properly train Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN.

276.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, failed to properly supervise Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN.

277.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, failed to properly implement policies to govern the conduct of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN.

/ / /

278.     As such, Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, were deliberately indifferent and reckless with respect to the potential violation of constitutional rights.

279.     The unconstitutional policies, practices, and customs defined herein were the moving force behind BYRON LEE WILLIAMS' death.

280.     The failure to train constituted an official policy of Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD.

281.     The failure to supervise constituted an official policy of Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD.

282.     Apprehending a suspect is a usual and recurring situation which agents of Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD encounter on a regular basis.

283.     As a direct and proximate result of the acts and omissions of Defendants CITY OF LAS VEGAS, CLARK COUNTY, and LVMPD, BYRON LEE WILLIAMS experienced a violation of his constitutional rights, including his Fourteenth Amendment rights and his Fourth Amendment rights, which resulted in his death.

284.     As a direct and proximate result of the acts and omissions of Defendants CITY OF LAS VEGAS, CLARK COUNTY, and LVMPD described herein, BYRON LEE WILLIAMS suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

285.     Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

286.     The conduct described in all of the preceding paragraphs amount to wrongful acts and omissions for purposes of Nevada Revised Statute § 41.085.

287.     As a direct and proximate result of these wrongful acts and omissions, BYRON LEE WILLIAMS' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by jury.

### EIGHTH CAUSE OF ACTION
### 42 U.S.C. §1983- Ratification
*Plaintiffs v. Defendant City of Las Vegas, Defendant Clark County, and Defendant LVMPD*

288.     Plaintiffs hereby adopt and re-allege paragraphs 1 through 287 as though fully set forth herein.

289.     At all times relevant, Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN were authorized officers, agents, and/or employees of Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, were acting in the course of their employment, within the scope of their authority as duly-certified law enforcement officers, and under color of state law.

290.     The acts of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN deprived BYRON LEE WILLIAMS of his particular rights under the United States Constitution.

291.     Upon information and belief, final policymaker, Sheriff Joe Lombardo, acting under color of law, who had final policymaking authority concerning the acts of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN, ratified the Defendant Officers' acts and the bases for them.

292.     Upon information and belief, the final policymaker, Sheriff Joe Lombardo, knew of and specifically approved of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN's acts after a lengthy investigation and a fact-finding public hearing.

293.     Upon information and belief, the final policymaker has determined that the acts of Defendant Officers CAMPBELL, VASQUEZ, GONZALEZ, and ROMAN were "within policy."

294.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of BYRON LEE WILLIAMS.

295.     The aforementioned acts and omissions also caused BYRON LEE WILLIAMS pain and suffering, loss of enjoyment of life, and death.

/ / /

## NINTH CAUSE OF ACTION
### Negligent Retention
*Plaintiffs v. Defendant City of Las Vegas, Defendant Clark County, and Defendant LVMPD*

296.     Plaintiffs hereby adopt and re-allege paragraphs 1 through 290 as though fully set forth herein.

297.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, owed a duty to citizens, such as decedent BYRON LEE WILLIAMS, to exercise care in the hiring, training, retention, and supervision of their police officers, so as to protect citizens from excessive force and a violation of their Constitutional rights, by police officers who have been inadequately trained, inadequately supervised, inadequately disciplined, and negligently hired and/or retained.

298.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, owed a duty to citizens, such as decedent BYRON LEE WILLIAMS, to exercise care in the retention of police officers who have violated the constitutional rights of arrestees, detainees, and the like.

299.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, breached that duty by upholding, in bad faith, a retention system that shields LVMPD Officers from accountability for the use of force.

300.     In 2017, according to its own statistics, LVMPD received 200 use of force related allegations. LVMPD sustained only 10 of those allegations—a rate of 5%.

301.     In 2018, LVMPD received 214 use of force related allegations and sustained only 12 of those allegations (5.6%).

302.     In 2019, LVMPD received 134 use of force related allegations and sustained 15 of those allegations (11.2%). Of the reported discipline for officers in 2019, six officers received a written reprimand, and 6 officers received minor suspension hours. Although one officer was terminated, the termination was not related to the use of force related allegation.

303.     In 2020, LVMPD received 189 use of force related allegations and sustained 8 of those allegations (4.2%). In 7 of those instances, officers received discipline. Of the reported discipline, 3 officers received a written reprimand, and 2 officers received minor suspension hours. Every officer was retained.

304.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD's bad faith refusal to terminate officers for unjustified use of force created the underlying environment in which unreasonable and unconstitutional use of force against arrestees by LVMPD officers became a custom and practice. This custom and practice was in place in 2019 when Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, failed to discipline the officers who committed such acts as alleged above and failing to remove unqualified police officers.

305.     As a direct and proximate result of Defendants' actions, as alleged above, Plaintiffs have been harmed, have suffered, and will suffer, loss of wages, salary, contractual benefits, loss of personal property, and certain other incidental and consequential economic expenses and losses, and will continue to suffer such actual damages in an amount according to proof at trial.

306.     As a further and proximate result of Defendants' unlawful conduct, Plaintiffs have become mentally upset, distressed and aggravated. The Plaintiffs claim emotional distress damages in an amount to be proven at trial.

Plaintiffs have incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial and is entitled to recovery of attorney's fees pursuant to statute. See 42 U.S.C.A. § 1988(b).

**TENTH CAUSE OF ACTION**
**Negligent Training**
***Plaintiffs v. Defendant City of Las Vegas, Defendant Clark County, and Defendant LVMPD***

307.     Plaintiffs hereby adopt and re-allege paragraphs 1 through 307 as though fully set forth herein.

308.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, through the LVMPD owed a duty to citizens, such as decedent BYRON LEE WILLIAMS, to exercise care in the hiring, training, retention, and supervision of their police officers, so as to protect citizens from excessive force and a violation of their Constitutional rights, by police officers who have been inadequately trained, inadequately supervised, inadequately disciplined, and negligently hired and/or retained.

309.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, owed a duty to citizens, such as decedent BYRON LEE WILLIAMS, so as to protect citizens from excessive force and a violation of their Constitutional rights, by police officers who have been inadequately trained.

310.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, breached that duty by upholding, in bad faith, a training program that continues to result in elevated amounts of use of force, both deadly and non-deadly, against non-white subjects, including BYRON LEE WILLIAMS.

311.     Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD's bad-faith continuance of a training program that results in high use of force rates against non-white subjects created a custom and practice within the LVMPD.

312.     This custom and practice was in place in 2019 when Defendants CITY OF LAS VEGAS, CLARK COUNTY, and the LVMPD, found that the Defendant Officers who committed such acts as alleged above had acted within policy.

313.     As a direct and proximate result of Defendants' actions, as alleged above, Plaintiffs have been harmed, have suffered, and will suffer, loss of wages, salary, contractual benefits, loss of personal property, and certain other incidental and consequential economic expenses and losses, and will continue to suffer such actual damages in an amount according to proof at trial.

314.     As a further and proximate result of Defendants' unlawful conduct, Plaintiffs have become mentally upset, distressed and aggravated. The Plaintiffs claim emotional distress damages in an amount to be proven at trial.

315.     Plaintiffs have incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial and is entitled to recovery of attorney's fees pursuant to statute. See 42 U.S.C.A. § 1988(b).

/ / /

/ / /

/ / /

## PRAYER

WHEREFORE, Plaintiffs, Marcia Wells and Teena Acree, individually and as Co-Administrators of the Estate of Byron Lee Williams, deceased, and Plaintiffs Tina Lewis-Stevenson, Gwendolyn Lewis, Robyn Williams, and Dewain Lewis, each individually as an heir, respectfully pray for judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1.    For General Damages according to proof;

2.    For Special Damages according to proof;

3.    For Exemplary Damages as provided by law, in an amount to be proved against each individual Defendant;

4.    For Attorney's Fees pursuant to 42 U.S.C. § 1988;

5.    For Costs of suit;

6.    For such other and further relief as the Court may deem just and proper.


Dated:  July 14, 2021                    Respectfully Submitted,
                                         MICHAELSON & ASSOCIATES, LTD
                                         ROMANUCCI & BLANDIN, LLC
                                         CRUMP LAW

                                         */s/* Patrick McDonnell, Esq
                                         Patrick McDonnell, Esq.
                                         Antonio M. Romanucci, Esq. (*Pro Hac Pending*)*
                                         Ben Crump, Esq. (*Pro Hac Pending*)*
                                         Bhavani Raveendran, Esq. (*Pro Hac Pending*)*
                                         Ian Fallon, Esq. (*Pro Hac Pending*)*
                                         *Attorneys for Plaintiffs*

*These attorneys will comply with LR IA 11-2 within 14 days.*

## DEMAND FOR JURY TRIAL

Plaintiffs, MARCIA WELLS and TEENA ACREE, individually and as Co-Administrators of the

43

Estate of Byron Lee Williams, deceased, and Plaintiffs TINA LEWIS-STEVENSON, GWENDOLYN LEWIS, ROBYN WILLIAMS, and DEWAIN LEWIS, individually as heirs, hereby demand a trial by jury.

Dated:  July 14, 2021

Respectfully Submitted,
MICHAELSON & ASSOCIATES, LTD
ROMANUCCI & BLANDIN, LLC
CRUMP LAW


**s/** Patrick McDonnell, Esq
Patrick McDonnell, Esq.
Antonio M. Romanucci, Esq. (*Pro Hac Pending*
Ben Crump, Esq. (*Pro Hac Pending*)
Bhavani Raveendran, Esq. (*Pro Hac Pending*)
Ian Fallon, Esq. *(Pro Hac Pending*)
*Attorneys for Plaintiffs*,